J-S15028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.T.B.-R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.T.B., MOTHER | No. 2368 EDA 2015 |

Appeal from the Order Entered July 6, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000133-2015
and CP-51-DP-0000209-2013

| | |
|---|---|
| IN THE INTEREST OF: E.T.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.T.B., MOTHER | No. 2369 EDA 2015 |

Appeal from the Order Entered July 6, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000132-2015

BEFORE: BENDER, P.J.E., OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 15, 2016**

S.T.B. ("Mother") appeals from the order which granted the petition filed by the Philadelphia Department of Human Services ("DHS"). The subject order terminated Mother's parental rights to her minor children, E.T.H. and S.T.B.-R. (hereinafter, collectively, "the Children"), and changed the permanency goal to adoption. We affirm.[1]

---

[1] The trial court terminated the parental rights of the Children's fathers on March 26, 2015. E.T.H.'s father, E.D.H., did not file an appeal. S.T.B.-R.'s father, J.M.R., appealed from this order, and we affirmed the termination of his parental rights on February 2, 2016. ***See In the Interest of S.T.B.-R.***, *(Footnote Continued Next Page)*

*Retired Senior Judge assigned to the Superior Court.

The trial court summarized the pertinent facts and procedural history as follows:

> On January 29, 2013, DHS received a Child Protective [S]ervices ("CPS") report alleging that [E.T.H., born in April 1999], was afraid to return home due to Mother's unrelated mental health issues. The report also alleged that Mother showed erratic behavior, suffered from anxiety, and appeared to be under the influence of drugs. On January 29, 2013, DHS went to [E.T.H.'s] school and learned that she was not enrolled in school. . . .
>
> On the same day, DHS visited Mother's home[.] Mother was present and stated to DHS that "she could not leave home because Michelle Obama was on her way to pick her up and escort her to the White House." DHS also learned that [S.T.B.-R., born in January 2007], had not been enrolled in school and that Mother had stabbed [S.T.B.-R.'s] father in the past. . . .
>
> DHS obtained an Order for Protective Custody ("OPC") as to [the Children]. On January 31, 2013, at a Shelter Care hearing, the OPC was lifted and the temporary commitment to DHS was ordered to stand. At the adjudicatory hearing, on March 8, 2013, the court discharged the temporary commitment, the Children were adjudicated dependent and were placed in foster care [through] Friendship House. Mother was granted supervised visitation. [E.T.H.'s] physical custody was ordered to be with [E.T.H.'s] eldest brother while [S.T.B.-R.'s] physical custody remained with [S.T.B.-R.'s] oldest sister. . . .
>
> On May 21, 2013, a Family Service Plan ("FSP") was developed for Mother. On May 28, 2013[,] DHS obtained a new OPC for [E.T.H.] due to the fact that [the paramour of

*(Footnote Continued)* ────────────────

___ A.3d ___, 2016 WL 416875 (Pa. Super. 2016) (unpublished memorandum) at 1-15.

E.T.H.'s custodian] threatened to physically injury [E.T.H.]. On May 30, 2013, at a Shelter Care hearing, [E.T.H.] was placed in foster care. . . .

At the [P]ermanency [R]eview [H]earing, on June 5, 2013, the trial court found Mother in moderate compliance with her FSP. Mother was ordered to sign releases, to continue with weekly supervised visitations[] and with mental health treatment. Mother was also referred to the [Clinical Evaluation Unit ("CEU")]. . . .

At a Permanency Review Hearing on October 4, 2013, the trial court again found Mother in moderate compliance with her FSP. Mother's visitation remained supervised at the agency. Mother was referred to Philadelphia Mental Health Services, to a parenting capacity evaluation as well as a bonding evaluation. In addition, the trial court ordered Mother to comply with her FSP and to sign releases.

At [a] Permanency Review Hearing[] on January 31, 2014, Mother was found in moderate compliance and did not attend mental health services. On February 12, 2014, a FSP meeting was held[;] Mother did not attend. On May 2, 2014, the trial court found Mother in moderate compliance with her FSP. Mother was ordered to sign all the necessary releases, was referred to Behavioral Health Services ("BHS"), was to contact Assessment and Treatment Alternatives ("ATA") and rescheduled her second half of the parenting capacity evaluation. Mother's visits remained weekly supervised. . . .

On July 2, 2014, at [a] Permanency Review Hearing, the trial court found Mother in minimal compliance [with her FSP]. Mother's visitation remained weekly supervised. Mother was again referred to the CEU for an evaluation, full drug & alcohol screen, and referred to BHS for consultation and evaluation. . . .

On October 3, 2014, the trial court found that Mother was minimally compliant with her FSP. Mother was referred to the CEU and ordered to confirm visitation in advance, to sign releases, and to contact ATA and to reschedule the parenting capacity evaluation. . . .

DHS filed the petition for [] termination of [Mother's] parental rights and [for a] goal change on March 4, 2015. On March 26, 2015, at a Permanency Review Hearing, the trial court referred Mother to the CEU. Mother completed the second half of the parenting capacity evaluation ordered by the trial court on April 9, 2015, after the date in which the petition for [] termination of [Mother's] parental rights was filed. . . .

On July 6, 2015, [at the conclusion of an evidentiary hearing,] the trial court terminated Mother's parental rights [to E.T.H. and S.T.B.-R. pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(8) and (b)].

Trial Court Opinion, 10/15/15, 1-3 (internal citations omitted).

This timely appeal followed. Mother presents the following issues:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(a)(8) where evidence presented to show that Mother is now capable of caring for [the C]hildren after she completed parenting classes, drug treatment and obtained suitable housing[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(b) where evidence was presented that established the [C]hildren had a close bond with their Mother[?] Additionally, Mother consistently attempted to visit with [the C]hildren for the entire time [the C]hildren were in placement.

Mother's Brief at 7.

We review an order terminating parental rights in accordance with the following standard:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of

fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result." *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Additionally, the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b) which provide:

**§ 2511. Grounds for involuntary termination**

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
>> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . .
>
> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(8) and (b).

"In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825

- 6 -

A.2d 1266, 1275-76 (Pa. Super. 2003); 23 Pa.C.S.A. § 2511(a)(8). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of DHS supplied over a realistic time period. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of DHS services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa. Super. 2003).

Instantly, Mother argues the trial court erred in terminating her parental rights under Section 2511(a)(8) because "[e]vidence presented at trial indicated that [she] has taken substantial steps in dealing with her drug problem through treatment." Mother's Brief at 9. Additionally, Mother argues that she "has complied with her FSP goals, including taking parenting classes and obtaining suitable housing" and that "[t]hese efforts show Mother is ready for reunification with her children." *Id.* Finally, Mother asserts that "DHS did not provide Mother with reasonable efforts to reunify [her] with her children." *Id.*

The trial court found no merit to Mother's claim. Initially, the court found that DHS met its burden by clear and convincing evidence that

"[E.T.H.] and [S.T.B.-R.] have been continuously under DHS custody for a period of [28] and [25] months, respectively." Trial Court Opinion, 10/15/15, at 3. With regard to the second element of Section 2511(a)(8), the trial court concluded that the conditions which led to the Children's removal continue to exist. It explained:

> In this case, the trial court found that Mother had failed to remedy the conditions that led to the removal of the Children, particularly her failure to successfully complete her mental health therapy, parenting classes, and obtain safe shelter. As to Mother's mental health, the record reflect[s] that Mother was diagnosed with schizophrenia and has a long history of mental health issues. Mother admitted that she suffers from anxiety, panic attacks[,] and sleeping issues. Mother has been hospitalized many times, the most recent at Mercy Fitzgerald [H]ospital for an overdose of prescription drugs. Five different substantiated [General Protective Services ("GPS")] reports, during the last [20] years, established that Mother has not overcome her mental health issues and that her mental illness has been an obstacle to her acquiring sufficient parental skills to provide and keep the Children safe. . . .
>
> In 1994 Mother left [the] Children's oldest sibling alone at a bus stop and the police had to bring him back; in 1999 [E.T.H.] [tested] positive for methadone at birth; in 2000 a court ordered DHS to supervise [the] Children's oldest sibling; in 2008 the GPS report was based on Mother's lack of supervision, negligence and mental health issues; and in 2013 Mother's lack of supervision was caused by Mother's mental health issues. . . .
>
> Mother was referred to the BHS several times. However, she has been inconsistent with her attendance and did not comply with her mental health therapy. Currently, it has been impossible to verify if Mother is receiving mental health therapy. As a result, throughout the life of this case, Mother had been involuntarily committed several times and her mental health has been unstable. Mother's

mental health has been an unsurmountable obstacle to build a relationship with [E.T.H.] and to develop a proper bond with [S.T.B.-R.].

As to Mother's parenting skills, she was referred to [the Achieving Reunification Center ("ARC"),] but she has not been compliant with the services offered and has not completed her parenting classes. The record established that Mother lacks parental skills to assume the care of [the] Children safely. Mother's mental health issues have prevented [her] from acquiring the capacity to safely parent these Children. As a result, Mother's visits with [S.T.B.-R.] have been supervised during the entire life of the case. Additionally, Mother has to be frequently redirected by the social worker during visitations with [S.T.B.-R.] and has showed deficient judgment as to what a parent should or should not say to [S.T.B.-R.], by making inappropriate statements to [her]. . . .

Mother has also engaged in episodes of domestic violence in front of the Children. The record established that during visits[,] Mother has not shown or engage[d] in a parental role with [the] Children. Despite Mother's consistency with [S.T.B.-R.'s] visits, visitation had to be stopped due to [S.T.B.-R.] being fearful of Mother. [E.T.H.] has also expressed being fearful of Mother and refuses to have supervised visits with Mother. . . .

As to Mother's housing, the record establishe[s] that Mother lacks safe housing. A home assessment had not been done yet, despite [assurances that] Mother lives with her oldest daughter and her three grandchildren in a three-bedroom house. . . .

As to [E.T.H.], [E.T.H. has] expressly manifested no desire for visitation with her Mother due to her fear of her Mother. . . .

Drug and alcohol has also been an old issue for Mother since 1999, when [E.T.H.] [tested] positive for methadone at her birth. Mother was ordered to attend the CEU but did not comply with the referrals. . . . Mother has never provided a valid excuse as why she refuses to attend the CEU. Mother eventually went to the CEU for drug screens

which showed small traces of marijuana, cocaine[,] and opiates raising concerns for the trial court that Mother is still abusing drugs. However, the CEU as of March 26, 2015, determined that Mother did not need any drug and alcohol treatment.

Trial Court Opinion, 10/15/15, at 4-5 (internal citations omitted).

Our own review of the hearing testimony amply supports the trial court's conclusions. Mother fails to support her contrary assertions with specific reference to testimony. Indeed, in making her conclusory statements that she met her FSP goals, Mother completely ignores her long battle with mental illness and the concomitant problems it has created with her ability to parent the Children.

Moreover, as noted by the trial court, Mother's own testimony regarding available housing and her current mental health treatment had yet to be verified. Trial Court Opinion, 10/15/15, at 5; *see also* N.T. Hearing, 7/6/15, at 36-38. As fact finder, the trial court is free to believe all, part, or none of the evidence presented, and therefore need not accept Mother's self-serving testimony. *In re M.G.*, *supra*. Finally, a review of the record readily refutes Mother's assertion that "[a]dditional support from the agencies that were supposed to help her would have allowed her to reunify with her children." Mother's Brief at 12. Mother again provides no specifics, and the record establishes the efforts made by DHS and other service providers. Thus, for all these reasons, our review of the record supports the

- 10 -

trial court's conclusion that the conditions that led to the children's removal continue to exist.

As for the third element of Section 2511(a)(8), we have observed as follows regarding the "needs and welfare" analysis pertinent to Section 2511(a)(8) and its interplay with similar inquiry under Section 2511(b):

> [I]nitially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child. However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent. Moreover, only if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court "engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In Re Adoption of C.L.G.*, 956 A.2d 999, 1008-1009 (Pa. Super. 2008) (*en banc*) (internal citations omitted).

With regard to the third element of Section 2511(a)(8), the trial court concluded that DHS proved by clear and convincing evidence that termination was in the best interests of the Children. It explained:

> The Children have been in their respective pre-adoptive home for a long time. The Children are in a safe home and [a] stable environment with [their] foster parent providing for all of their needs. [The] Children are doing very well in school, are up to date on their medical and dental appointments and immunizations. Foster parent was able to address [S.T.B.-R.'s] eye issues and enroll [her] at the school for the blind. All [of the] Children's needs have been satisfied. The Children need permanency. Termination of Mother's parental rights and adoption would best serve the needs and welfare of the Children. [E.T.H.] expressly manifested that she wants to be adopted by her foster parent. The testimony of the DHS witnesses was unwavering and credible.

Trial Court Opinion, 10/15/15, at 5-6 (citations to notes of testimony omitted).

Our review of the record supports the trial court's conclusions that the current needs of both E.T.H. and S.T.B.-R. are being met by their foster parent. Within her brief, Mother does not challenge any of the trial court's findings. Thus, because DHS established, by clear and convincing evidence all three elements required pursuant to Section 2115(a)(8), the trial court did not err in terminating Mother's parental rights to E.T.H. and S.T.B.-R.

In her second issue, Mother claims that the trial court erred and/or abused its discretion in terminating her parental rights to E.T.H. and S.T.B.-R. pursuant to Section 2511(b). According to Mother, "the social worker testified that there was a bond between Mother and both of her children," and that she "should have been provided with realistic goals that would have permitted her unsupervised visitation with her children." Mother's Brief at 13. For this reason, Mother asserts that termination of her parental "rights

does [not] serve the children's physical and emotional needs and welfare."

*Id.* We disagree.

With respect to Section 2511(b), this Court explained the relevant analysis as follows:

> [Section] 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Here, the trial court discussed the "bond-effect analysis" in the following manner:

> The record established that [E.T.H.] would not suffer any irreparable harm by terminating Mother's parental rights. Mother and [E.T.H.] do not have a parent/child bond due to lack of visitation and contact. [E.T.H.] continues to refuse visitation with Mother due to being fearful of her. As to [S.T.B.-R.], the record established that there is a weak bond that does not constitute a parent/child bond and [S.T.B.-R.] does not show emotion when Mother visits her. Termination would not destroy a necessary and beneficial relationship with Mother. [E.T.H.] expressly manifested that she wants to be adopted by her foster parent. [S.T.B.-R.] would not suffer irreparable harm if Mother's parental rights were terminated. Children are bonded with their foster parent[] and both Children call her "mom." [S.T.B.-R.] has special needs as established by

- 13 -

her Comprehensive Biopsychological evaluation report from October 31, 2013. Accordingly, [S.T.B.-R.] suffers from astigmatism and a severe visual impairment. Foster parent provides for both Children's daily and special needs. Children are doing very well in school, are up-to-date with their medical and dental appointments and immunizations. Foster parent addressed [S.T.B.-R.'s] eye issues by enrolling her at the school for the blind. [E.T.H.] is afraid of her Mother and [S.T.B.-R.'s] visits were stopped due to a fear episode with [S.T.B.-R.]. As a result, it is in the best interest of the Children to terminate Mother's parental rights. Mother's parental rights are not being terminated on the basis of environmental factors. [Children have] been in foster care too long and [need] permanency. DHS witnesses were credible.

Trial Court Opinion, 10/15/15, at 6-7 (citations to notes of testimony omitted).

Once again, our review of the record supports the trial court's conclusion regarding the absence of any true parent/child bond with regard to either E.T.H. or S.T.B.-R. Mother presents no argument regarding the existence of a bond with E.T.H. At trial, Mother essentially testified that she was unable to further develop a bond with S.T.B.-R. because she could not enjoy unsupervised visitation. *See* N.T. Hearing, 7/16/15, at 55. With regard to the possibility of unsupervised visitation, Mother's previous case worker testified:

To maintain a goal of reunification would be very concerning at this point. It's been a very long time that [S.T.B.-R.] has been in care with supervised visits and the fact from my experience that we weren't able – the department of CUA was not able to step down to unsupervised contact shows that there's a continued concern in regards to [M]other's ability to ensure the safety of [S.T.B.-R.] and to parent [her]. And at this

- 14 -

point, there is no way to know if there is a bond without having unsupervised visits.

*Id.* at 17-18.

Mother's current caseworker echoed that, before Mother's current visitation could transition to an unsupervised visitation, she would "need to see more of a bond between [Mother] and [S.T.B.-R.] and there's not a real bond yet." *Id.* at 39. Although Mother argues that, had DHS established more "realistic goals" she could have transitioned to unsupervised visits, once again she does not specify any particular goal she would be able to achieve. Both caseworkers opined that Mother's mental health issues have prevented a parent/child bond from forming between Mother and either of the Children. Because there was no evidence of such a bond, it can be inferred that one does not exist. *In re: Adoption of J.M.*, *supra*.

In sum, our review of the record supports the trial court's determination that DHS has met its statutory burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S.A. §§ 2511(a)(8) and 2511(b). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/15/2016